AO 106 (Rev. 06/09) Application for a Search Warrant

FILED
AUG 0 3 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. **18MJ4308**
)
Apple iPhone Cellular Phone, FCC ID BCG-E2644A, )
IMEI# 358536058117038 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A (incorporated herein)

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B (incorporated herein)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 952, 960, 963 | Importation of a Controlled Substance |

The application is based on these facts:
See Affidavit of Brian D. Ficucell (incorporated herein)

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

HSI Special Agent Brian D. Ficucell
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/3/18

_____
*Judge's signature*

City and state: San Diego, CA    Hon. Barbara L. Major, U.S. Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>Apple iPhone Cellular Phone, FCC ID BCG-E2644A, IMEI# 358536058117038 | **AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT** |

I, Brian D. Ficucell, Special Agent with the United States Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"), having been duly sworn, state as follows:

## INTRODUCTION

1. This affidavit is made in support of an application for a warrant to search: An Apple iPhone Cellular Phone, FCC ID BCG-E2644A, IMEI# 358536058117038 (hereinafter "Target Telephone 1") seized from Elena RODRIGUEZ (hereinafter "RODRIGUEZ"), as more particularly described in Attachment A.

2. Target Telephone 1 was seized from RODRIGUEZ on or about December 3, 2017 at about the time of her arrest. It is believed that Target Telephone 1 was used by RODRIGUEZ to communicate with co-conspirators during a drug smuggling event on December 3, 2017. RODRIGUEZ has been charged with importation of 25 kilograms of cocaine, 1.12 kilograms of fentanyl, and 5.5 kilograms of heroin in the Southern District of California. Probable cause exists to believe that Target Telephone contains evidence relating to violations of Title 21, United States Code Sections 952 and 960. Target Telephone is currently in the possession of the Department of Homeland Security, Homeland Security Investigations (HSI), Deputy Special Agent in Charge, located at 2255 Niels Bohr Ct. San Diego, California, 92154.

3. Based on the information below, there is probable cause to believe that a search of Target Telephone will produce evidence of the aforementioned crimes, as described in Attachment B.

4. This affidavit is based upon information I have gained through training and experience, as well as upon information related to me by other individuals, including law enforcement officers. In preparation of this affidavit, I have discussed the facts of this case with other law enforcement agents and officers within DEA and the Department of Homeland Security. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known concerning this investigation but have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence relating to violations of Title 21, United States Code, Sections 952, and 960, described in Attachment B, is located on the cellular phone described in Attachment A.

## EXPERIENCE AND TRAINING

5. I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations and have been so employed for approximately seven years. I have conducted criminal investigations of or relating to narcotics smuggling and other crimes. I have received specific training in the area of narcotics investigations, and I have training and experience in the methods used by narcotics traffickers to import and distribute drugs. My current duties include investigating the illicit trafficking of controlled substances into the United States of America. I am cross-designated by the United States Drug Enforcement Administration to conduct narcotics investigations and enforce the provisions of the Federal Controlled Substance Act, pursuant to Title 21, United States Code.

6. Prior to working for Homeland Security Investigations, I was employed as a United States Postal Inspector for approximately five years. As a Postal Inspector, I conducted

criminal investigations of or relating to narcotics and received specific training in the area of narcotics investigations.

7. By virtue of my employment as a Special Agent with HSI, I have performed various tasks, which include, but are not limited to:

   a. Functioning as a surveillance agent and thereby observing and recording movements of persons trafficking in controlled substances and those suspected of trafficking in controlled substances;

   b. Participating in the tracing of monies and assets gained by controlled substance traffickers from the illegal sale of controlled substances and/or the laundering of monetary instruments;

   c. Interviewing witnesses, cooperating individuals, and informants involved in or with knowledge of the illegal trafficking of controlled substances and the distribution of monies and assets derived from the illegal trafficking of controlled substances (laundering of monetary instruments); and

   d. Functioning as a case agent, which entails the supervision of specific investigations involving the trafficking of narcotics and the laundering of monetary instruments.

8. Through the course of my trainings, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular phones, tablets, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. Typically, load drivers smuggling controlled substances across the border are in telephonic contact with co-conspirators to receive instructions on how to cross and where and when to deliver the controlled substance.

9. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

10. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers believe that cellular telephones provide greater insulation and protection against court-ordered wiretaps, and they believe in the inability of law enforcement personnel to simultaneously track the originating and destination telephone numbers of calls placed to and from their cellular telephones.

    c. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    d. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    e. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    f. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

**STATEMENT OF PROBABLE CAUSE**

11. On December 3, 2017, at approximately 2:55 p.m., RODRIGUEZ drove a blue Dodge Avenger, bearing a California license plate 7UNW545, to the Otay Mesa Port of Entry, accompanied by her two minor children. In the area leading up to the vehicle primary inspection booth, a narcotics detection dog alerted to RODRIGUEZ's vehicle. Another officer began inspecting RODRIGUEZ and the vehicle at that time.

4

12. The officer asked RODRIGUEZ whether the vehicle was hers, and she responded that it was. The officer asked RODRIGUEZ how long she had owned the vehicle, and she responded, "For a little while. I bought the car at an auto auction." The officer asked her to clarify how long she had owned the vehicle, and RODRIGUEZ stated that it had been a couple of months. The officer also asked RODRIGUEZ for details about her trip to Mexico. RODRIGUEZ told him that she had been in Mexico since Friday and that she was heading to Baldwin Park. She also informed the officer that the vehicle had been in her possession for her entire trip in Mexico. The officer also asked RODRIGUEZ whether she was bringing anything back from Rosarito like plants, fruits, meats or vegetables, and she responded, "I was in Rosarito." The officer believed that RODRIGUEZ seemed distracted and nonresponsive when he asked her questions. Based on his interaction with RODRIGUEZ and the narcotics alert from the canine officer, the officer escorted RODRIGUEZ to the security office and referred her vehicle for further inspection.

13. Further inspection revealed a small door located on both the driver side and passenger side rocker panels. An officer removed the door on each side and found several packages located inside the rocker panels. The packages were labeled "Pariente," "Oxxo," "Gordo," and "P.A." The "P.A." package weighed 1.1 kilograms and field-tested positive for heroin. The twenty "Gordo" packages weighed 25 kilograms and field-tested positive for cocaine. The four "Oxxo" packages weighed 4.4 kilograms and field-tested positive for heroin. The "Pariente" package weighed 1.12 kilograms and field-tested positive for fentanyl.

14. A registration document found in the vehicle showed RODRIGUEZ as the registered owner since September 27, 2017. Crossing records show that she crossed the vehicle into the United States from Mexico on at least seven prior occasions, beginning as early as October 1, 2017. These records also show that the vehicle last entered Mexico from the United States on the Saturday before RODRIGUEZ's arrest (which took place on a Sunday), and not the Friday before as she indicated to the officer inspecting her at the port of entry.

15. At the time of RODRIGUEZ's arrest, CBP officers seized Target Telephone 1 and another cellular phone from her as evidence.

16. Based upon my experience and investigation in this case, I believe that RODRIGUEZ, as well as other persons, was involved in an on-going conspiracy to import, transport, possess, and distribute narcotics throughout the State of California. Based on my experience investigating narcotics smugglers, I also believe that RODRIGUEZ used Target Telephone 1 to coordinate with co-conspirators regarding the transportation and delivery of the narcotics and to otherwise further this conspiracy both inside and outside the United States. I also know that recent calls made and received, phone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of electronic devices described herein, which identify other persons involved in narcotics trafficking activities.

17. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling of RODRIGUEZ, and co-conspirators, such as phone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the electronic device described herein. Given the vehicle's registration date and the date of RODRIGUEZ's crossings, I believe that relevant information is stored on Target Telephone 1 from September 27, 2017 to December 13, 2017.

**PROCEDURES FOR ELECTRONICALLY STORED INFORMATION
AS TO THE CELLULAR TELEPHONE**

18. It is not possible to determine, merely by knowing the cellular telephone's make, and FCC, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers

6

1 allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the subject cellular telephones and subject them to analysis. All forensic analysis of the data contained within the telephones and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

21. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence of violations of Title 21, United States Code, Sections 952 and 960 may be located on Target Telephone described in Attachment A. I,

therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

_____
Brian D. Ficucell
Special Agent
Homeland Security Investigations

SUBSCRIBED and SWORN to before me
this _3_ day of August, 2018

_____
THE HONORABLE BARBARA L. MAJOR
UNITED STATES MAGISTRATE JUDGE

8

# ATTACHMENT A
## PROPERTY TO BE SEARCHED

An Apple iPhone Cellular Phone, FCC ID BCG-E2644A, IMEI# 358536058117038, seized from Elena RODRIGUEZ on December 3, 2017 at the Otay Mesa, California, Port of Entry. It is currently in the possession of the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, Special Agent in Charge, located at 2255 Niels Bohr Ct., San Diego, California, 92154.

## ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the Target Telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the Target Telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the Target Telephone described in Attachment A will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period from September 27, 2017 to December 3, 2017:

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

    a. tending to indicate efforts to smuggle narcotics from Mexico to the United States and within the United States;

    b. tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence tending to indicate efforts to smuggle narcotics from Mexico to the United States and within the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in smuggling narcotics from Mexico to the United States and within the United States;

    d. tending to identify travel to or presence at locations involved in the smuggling of narcotics from Mexico to the United States and within the United States, such as stash houses, load houses, or delivery points.

    e. tending to identify the user of, or persons with control over or access to, the subject phones; or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

The seizure and search of the cellular phone shall follow the procedures outlined in the supporting affidavit.